UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| D.L.P.,<br><br>    Plaintiff,<br><br> v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 21-cv-00792-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 31, 32 |

Plaintiff D.L.P.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner")[2] denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq.* D.L.P. contends that the ALJ erred by failing to consider his mild mental limitations and medication side effects in determining his residual functional capacity ("RFC") and in finding that he could return to his past relevant work as a jeweler.

The parties have filed cross-motions for summary judgment. The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court denies D.L.P.'s motion for summary

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as defendant in place of Andrew Saul.

judgment and grants the Commissioner's cross-motion for summary judgment.[3]

## I.   BACKGROUND

Born in 1959, D.L.P. completed the eleventh grade in high school and worked for over thirty years as a jeweler. *See* AR[4] 379, 405, 435.

D.L.P. protectively filed his SSI application in March 2018, alleging that he has been disabled and unable to work since March 9, 2018 due to back pain. *See* AR 288, 379-85, 404. His application was denied initially and on reconsideration. AR 287-311. An ALJ held a hearing on December 16, 2019, at which a vocational expert ("VE") testified. AR 250-86.

On May 5, 2020, the ALJ issued an unfavorable decision. AR 17-36. He found that D.L.P. has not engaged in substantial gainful activity since the March 9, 2018 SSI application date. He further found that D.L.P. has degenerative disc disease of the cervical and lumbar spine, and that the impairment is severe. AR 22. However, the ALJ concluded that D.L.P. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations. AR 25. Additionally, the ALJ found that D.L.P.'s medically determinable mental impairments cause no more than mild functional limitations, do not cause more than minimal limitation in his ability to perform basic mental work activities, and are not severe. AR 23, 25. The ALJ determined that D.L.P. has the RFC to perform light work, except that he has additional postural limitations and can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds, and can occasionally stoop, kneel, crouch, and crawl. *Id*. The ALJ further found that D.L.P. is capable of performing his past relevant work as a jeweler and that this work does not require the performance of work-related activities precluded by D.L.P.'s RFC. AR 30. Accordingly, the ALJ concluded that D.L.P. has not been disabled as defined by the Act since the March 9, 2018 date of his SSI application. *Id*.

The Appeals Council denied D.L.P.'s request for review of the ALJ's decision. AR 1-7.

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 8.

[4] "AR" refers to the certified administrative record lodged with the Court. Dkt. No. 24.

1    D.L.P. then filed the present action seeking judicial review of the decision denying his SSI
2    application.

## II.  LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III.  DISCUSSION

### A.  Mental Impairments

At step two of the sequential analysis, the ALJ found that D.L.P. has medically determinable mental impairments of major depressive disorder and alcohol use disorder, which cause mild limitations in the four broad areas of mental functioning described in regulations for evaluating mental impairments, known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* AR 25; *see also* 20 C.F.R. § 416.920a (describing process for evaluating mental impairments). "Because [D.L.P.]'s medically

1   determinable mental impairments cause no more than 'mild' limitation in any of the functional
2   areas," the ALJ found that the impairments "do not cause more than minimal limitation in [his]
3   ability to perform basic mental work activities" and "are non-severe." AR 23, 25. At the
4   administrative hearing, the ALJ posed several hypotheticals to the VE, one of which included a
5   limitation to "simple, routine, repetitive task[s]." AR 283. In response, the VE confirmed that
6   D.L.P.'s past relevant work could not be performed and there would be no transferrable skills.
7   AR 283-84. In concluding that D.L.P. is not disabled, the ALJ relied on a different hypothetical
8   for which the VE testified that a person of D.L.P.'s age, education, and work experience who is
9   limited to light work with additional postural limitations could perform D.L.P.'s past relevant
10  work as a jeweler. AR 25, 283.

11      D.L.P. does not challenge the finding that his mental impairments are mild, do not cause
12  more than minimal limitation in his ability to perform basic mental work activities, and are not
13  severe. He contends that the ALJ erred by failing to consider and include the mild mental
14  limitations in the RFC assessment and by relying on a hypothetical question that did not account
15  for such limitations. The VE testified that under the Dictionary of Occupational Titles, a jeweler
16  performs skilled work. AR 283. D.L.P. submits that the ALJ's alleged error is material, positing
17  that even a mild mental impairment "may have an impact on the ability to perform the highly
18  skilled and corroborative job of a jeweler." Dkt. No. 31 at 7.[5]

19      In assessing a claimant's RFC, an ALJ must consider all of the claimant's limitations,
20  including those that are not severe. *See* 20 C.F.R. § 416.945(a)(2) ("We will consider all of your
21  medically determinable impairments of which we are aware, including your medically
22  determinable impairments that are not 'severe,' . . . when we assess your residual functional
23  capacity."); *id*. § 416.945(e) ("When you have a severe impairment(s), but your symptoms, signs,
24  and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of subpart
25  P of part 404 of this chapter, we will consider the limiting effects of all your impairment(s), even
26  those that are not severe, in determining your residual functional capacity."); *see also* Social

---

[5] By "corroborative," the Court understands D.L.P. to mean that a jeweler performs "cooperative" work. *See* Dkt. No. 31 at 6.

Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The limitations identified in the paragraph B criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184 at *5. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[] B . . . of the adult mental disorders listings in 12.00 of the Listing of Impairments . . .." *Id.*; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E (providing examples illustrating the nature of each of the four broad function categories). "While these regulations require the ALJ to *consider* the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC." *Rania v. Kijakazi*, No. 2:20-cv-01541 MCE CKD (SS), 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021), *report and recommendation adopted,* 2022 WL 95228 (E.D. Cal. Jan. 7, 2022); *see also Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) ("*Consideration* of 'the limiting effects of all impairments' does not necessarily require the *inclusion* of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work."). "Provided the ALJ does not rely on boilerplate language, but actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment, the ALJ has not committed legal error." *Medlock*, 2016 WL 6137399 at *5.

Relying on *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012), D.L.P. argues that at step four of the sequential analysis, the ALJ should have performed a more detailed evaluation of his mental impairments in determining his RFC and should not have relied on a hypothetical that did not include limitations based on those impairments. *See* Dkt. No. 31 at 5-8; Dkt. No. 34 at 7. In *Hutton*, the ALJ determined at step two that the claimant's post-traumatic stress disorder ("PTSD") caused mild limitations in one of the four broad paragraph B functional areas and was

not severe. *Id*. at 850. In determining the claimant's RFC, however, the ALJ excluded the claimant's PTSD from consideration altogether, finding that the claimant lacked credibility and that "his PTSD claims were in 'great doubt.'" *Id*. at 850-51. The Ninth Circuit held that this constituted reversible error. Although the ALJ was free to discount the claimant's testimony, the ALJ could not ignore his own findings that the claimant's non-severe PTSD caused mild limitations in the areas of concentration, persistence, or pace. *Id*.

*Hutton* is inapposite. In the present case, unlike *Hutton*, the record shows that the ALJ reviewed the evidence (including medical records, opinions, statements, and testimony) and explained his findings regarding various functions within each of the four broad paragraph B criteria in determining D.L.P.'s RFC. For example, in finding that D.L.P. has mild limitations in understanding, remembering, or applying information,[6] the ALJ acknowledged D.L.P.'s alleged difficulty in completing tasks, but correctly noted that D.L.P. "also stated that he could perform simple maintenance, prepare meals, go to doctor's appointments, take medications, take public transportation, shop, and read" and that the record demonstrated D.L.P.'s ability "to provide information about his health, describe his prior work history, and respond to questions." AR 24 (citing AR 250-286, 422-434, 1338-1348). In discussing D.L.P.'s mild limitations in interacting with others,[7] the ALJ explained that while D.L.P. alleged difficulty in engaging in social activities, D.L.P.'s statements demonstrated that he "is also able to shop, attend church, take public

---

[6] "This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.1. The Commissioner does not require documentation of all of the listed examples. *Id*.

[7] "This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.2. The Commissioner does not require documentation of all of the listed examples. *Id*.

transportation, deal appropriately with authority, and live with others." *Id.* (citing 250-286, 422-434, 1343-1348). Additionally, the ALJ observed that medical records showed that D.L.P. "had a good rapport with providers, was described as friendly and cooperative, and appeared comfortable during appointments." *Id.* (citing AR 1338-1348). With respect to the functional ability to concentrate, persist, or maintain pace,[8] the ALJ noted D.L.P.'s contention that he has limitations in concentrating, but also correctly observed that D.L.P. "said that he is also able to prepare meals, watch television, read, manage funds, use the internet, handle his own medical care, and attend church." AR 25 (citing AR 250-286, 422-434, 1343-1348). As for the ability to adapt or manage oneself,[9] the ALJ noted D.L.P.'s assertion that he has difficulty managing his mood, but correctly observed that D.L.P. "also stated that he is able to handle self-care and personal hygiene," and that objective evidence showed that he "has appropriate grooming and hygiene, no problem getting along well with providers and staff, and no problems with temper control." *Id.* (citing AR 422-434, 1338-1348).

The ALJ also considered and discussed the medical evidence and opinions relating to D.L.P.'s mental impairments. *See* 20 C.F.R. § 416.945(a)(3) (stating that RFC is assessed "based on all of the relevant medical and other evidence[.]"). He found that D.L.P.'s major depressive disorder was effectively managed with a period of medication and therapy sessions, resulting in a finding of full remission as of September 2019, and that with the exception of a one-time relapse

---

[8] "This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.3. The Commissioner does not require documentation of all of the listed examples. *Id.*

[9] This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4. The Commissioner does not require documentation of all of the listed examples. *Id.*

in October 2019, D.L.P. testified at the administrative hearing that he had been sober for about a year.  AR 23 (citing AR 250-286, 1343-1348, 1612, 1646-1727).  With respect to the opinion evidence relating to D.L.P.'s mental impairments, the ALJ found persuasive the November 2018 opinion of state agency consultant Dr. Jill Rowan, Ph.D., who reviewed D.L.P.'s medical records and opined that he does not have a severe mental impairment.  AR 23, 305.  The ALJ found Dr. Rowan's opinion consistent with evidence of record as a whole, including D.L.P.'s improvement with treatment, his ability to deal with stress and changes in routine, and his ability to maintain activities of daily living.  AR 23 (citing 422-434, 1344).  Additionally, the ALJ noted state agency consultants' expertise "in Social Security disability programs and the evaluation of medical issues in disability claims under the Act," and the fact that Dr. Rowan's opinion is based on an independent review of D.L.P.'s records and concerns a matter within her field of medical expertise.  AR 23-24.  The ALJ did not find persuasive the opinion of consultative examiner Molly Malone, Psy.D., who conducted a mental status evaluation of D.L.P. in November 2018 and opined that he is moderately impaired in his ability to complete a normal workday or workweek without interruptions from his psychiatric condition and to deal with the usual stresses encountered in a competitive work environment.  AR 24, 1346.  The ALJ found Dr. Malone's opinion inconsistent with D.L.P.'s ability to withstand the stress of the evaluation and with his ability to conduct daily living activities, as reported to Dr. Malone.  AR 24.  Additionally, the ALJ noted that Dr. Malone did not review all of D.L.P.'s medical records and appeared to rely heavily on D.L.P.'s subjective complaints, which the ALJ found inconsistent with the objective evidence.  AR 24, 1343.

D.L.P. does not challenge the ALJ's evaluation of this evidence, including the assessment of the opinions of Drs. Rowan and Malone.  However, he appears to take issue with the fact that the ALJ's discussion of this evidence is included in the portion of his decision concerning steps two and three of the sequential analysis, rather than step four.  *See* Dkt. No. 34 at 4.  Acknowledging that a mental RFC determination "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments," the ALJ incorporated his step

two analysis into his RFC assessment, stating that his subsequent RFC assessment "reflects the degree of limitation [he] has found in the 'paragraph B' mental function analysis." AR 25. Some courts have concluded that the same or similar statements incorporating the ALJ's step two analysis into the RFC determination are merely empty boilerplate statements, where "the ALJ did not discuss or give reasoned consideration of the plaintiff's [mental impairments] in his RFC assessment." *Carlson v. Berryhill*, No. 18-cv-03107-LB, 2019 WL 1116241. at *17 (N.D. Cal. Mar. 10, 2019) (citing cases). In the present case, however, given the detailed discussion that precedes the ALJ's statement incorporating his step two analysis into the subsequent RFC assessment, the Court finds that this statement was not mere boilerplate, and that the ALJ did consider D.L.P.'s non-severe mental impairments in formulating his RFC. *See, e.g., Virginia Estelle G. v. Comm'r of Soc. Sec.*, No. 21-cv-00674-W-KSC, 2022 WL 1404218, at *9-10 (S.D. Cal. May 4, 2022) (concluding that the ALJ properly incorporated the step two analysis into the RFC analysis by reference, where the ALJ's psychiatric review technique included specific findings as to plaintiff's degree of limitation in each functional area, as well as a discussion of the medical evidence and opinions relating to plaintiff's mental impairments); *Frary v. Comm'r of Soc. Sec.*, No. 1:20-cv-00260-SAB, 2021 WL 5401495, at *19 (E.D. Cal. Nov. 18, 2021) (concluding that the ALJ's "reasoned further discussion in conjunction with the express incorporation of the step two findings within the RFC, distinguishes this from other cases finding error, and the Court finds this was not a hollow boilerplate incorporation of the paragraph B criteria within the RFC."); *Jones v. Berryhill*, No. EDCV 17-1138-AS, 2018 WL 3956479, at *3 (C.D. Cal. Aug. 15, 2018) (concluding that although the ALJ did not include any mental limitations in plaintiff's RFC, he properly considered at step two the overall record evidence and the functional limitations resulting from plaintiff's impairments, including those that are not severe); *Ball v. Colvin*, No. CV 14-2110-DFM, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) (concluding that the ALJ considered plaintiff's mild mental limitations in determining her RFC by incorporating his step two analysis by reference, and when formulating plaintiff's RFC, stating "that 'Dr. Dossett's opinion and the opinion of the State Agency medical consultant concerning the alleged severity of the [Plaintiff's] mental impairments were discussed in reference

to step two of the sequential evaluation process.'"); *Webb v. Colvin*, No. 2:12-cv-00592-GMN-PAL, 2013 WL 5947771, at *12 (D. Nev. Nov. 5, 2013) ("Although the ALJ did not extensively discuss Plaintiff's mental impairments at step four, he thoroughly discussed the evidence supporting his findings at step two and incorporated them by reference in his RFC analysis. . . . The Court finds the ALJ considered Plaintiff's mild mental limitations in his RFC analysis.").

The Court also is not persuaded that the ALJ erred by not including any limitations reflecting mild mental impairments in D.L.P.'s RFC. As noted above, D.L.P. does not contest the ALJ's finding that his mental impairments are mild and not severe and "do not cause more than minimal limitation in [his] ability to perform basic mental work activities," a finding that is supported by substantial evidence in the record. *See* AR 23-25, 250-286, 422-434, 1338-1348; *see also* 20 C.F.R. § 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."). As noted above, the record reflects that the ALJ considered D.L.P.'s mild mental impairments, but such impairments need not be included in the RFC. *Jones*, 2018 WL 3956479 at *3 ("Because the ALJ found that Plaintiff's mental impairments were non-severe and did not cause any significant impairments, the ALJ was not required to include them in Plaintiff's RFC."); *Ball*, 2015 WL 2345652 at *3 ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC.").

D.L.P. nonetheless maintains that the ALJ erred by relying on a hypothetical to the VE that did not reflect any mental impairments. He argues that the ALJ was obliged to pose a hypothetical asking the VE to determine if his mild limitations in the four broad paragraph B criteria would have any impact on his ability to perform his skilled past relevant work. Dkt. No. 31 at 8. "An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir.1995)); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("As the Commissioner correctly recognizes, in hypotheticals posed to a vocational expert, the ALJ must only include

those limitations supported by substantial evidence."). "The limitation of evidence in a hypothetical question is objectionable only if the assumed facts could not be supported by the record." *Magallanes v. Bowen*, 881 F.2d 747, 757 (9th Cir. 1989) (internal quotations and citation omitted). "The [VE]'s opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record." *Id*. at 756 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental supported by the record.") (internal quotations and citations omitted). As noted above, the ALJ relied on a hypothetical based on an RFC for light work with additional postural limitations, as to which the VE testified that D.L.P.'s past relevant work could be performed. AR 283. The Court finds no error here. For the reasons discussed above, the ALJ's finding that D.L.P.'s mental impairments do not cause more than minimal limitation in his ability to perform basic work activities is supported by substantial evidence in the record. These impairments did not need to be included in the RFC, and therefore they also did not need to be included in the hypothetical posed to the VE. *See Osenbrock*, 240 F.3d at 1164-65 (concluding that ALJ did not err by omitting any limitations for depression from a hypothetical question, where the record demonstrated that claimant's mild depression "presented no significant interference with the ability to perform basic work-related activities."); *Sisco v. Colvin*, No. 13-CV-01817-LHK, 2014 WL 2859187, at *8 (N.D. Cal. June 20, 2014) ("As the ALJ determined that Sisco's mental impairment imposed 'no significant functional limitations,' the ALJ was not required to include a mental limitation in the hypotheticals posed to the vocational expert.").

### B. Medication Side Effects

D.L.P. contends that the ALJ erred in failing to consider the side effects of his medications—namely, dizziness that he says affects his ability to concentrate. He argues that the alleged error is material because his claimed difficulties with concentration are inconsistent with the ability to perform his past relevant work as a jeweler and are more consistent with the ALJ's second hypothetical reflecting a limitation to simple, routine, repetitive tasks and which the VE

1    testified would preclude D.L.P.'s past work. *See* AR 283-84.

2    "An ALJ is required to consider all factors that might have a significant impact on an
3    individual's ability to work, including the side effects of medication." *Browning v. Colvin*, 228 F.
4    Supp. 3d 932, 944 (N.D. Cal. 2017) (citing *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir.
5    1993)); *see also Varney v. Sec. of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir.) (stating
6    that "the side effects of medications can have a significant impact on an individual's ability to
7    work and should figure in the disability determination process"), *modified on rehearing on other*
8    *grounds*, 859 F.2d 1396 (1988); 20 C.F.R. § 416.929(c)(3)(iv) (stating that assessment of a
9    claimant's alleged symptoms related to a medical impairment includes the "type, dosage,
10   effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate
11   [their] pain or other symptoms."). "Side effects not 'severe enough to interfere with [a claimant's]
12   ability to work' are properly excluded from consideration." *Browning*, 228 F. Supp. 3d at 944
13   (quoting *Osenbrock*, 240 F.3d at 1164)). "The plaintiff ultimately bears the burden of
14   demonstrating that his use of medications caused a disabling impairment." *Id*. (citing *Miller v.*
15   *Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)).

16   The primary focus of D.L.P.'s arguments is his hypertension medication, which he claims
17   causes dizziness affecting his ability to concentrate, and consequently, his ability to perform his
18   past skilled work as a jeweler. *See* Dkt. No. 31 at 9-10. Although D.L.P. directs the Court to his
19   hearing testimony, D.L.P. did not testify that he experienced dizziness as a side effect of his
20   hypertension medication. *See* AR 264, 271-72. D.L.P. points to medical records documenting a
21   past medical history of the treatment of hypertension with "unknown meds" that D.L.P. said
22   "make him dizzy," as well as his reports to health providers that Amlodipine made him dizzy.
23   However, those same records also indicate that D.L.P.'s hypertension medication was changed
24   from Amlodipine to Lisinopril; in June 2019 D.L.P. reported taking Lisinopril daily, with no
25   problems; in September 2019, his hypertension medication was changed again after he reported
26   that Lisinopril made him "feel bad"; and subsequent records indicate he continued with his new
27   medication, with no mention of side effects and his hypertension "reasonably well controlled."
28   *See* AR 135-141, 143, 514, 559, 563, 565, 567, 569, 573, 576, 579, 581, 584, 586, 591, 1316,

1325, 1332, 1611, 1612, 1614, 1617, 1620, 1627, 1638, 1642, 1915. D.L.P. cites to a record of a February 2020 hospital visit, noting that he reported "feeling lightheaded and dizzy." AR 54. However, nothing in that record (concerning treatment for hematemesis and resultant mild anemia) indicates that those symptoms were due to any medication. The ALJ did not err in failing to consider the side effects of D.L.P.'s hypertension medications because D.L.P. has not produced "evidence of side effects severe enough to interfere with [his] ability to work." *Osenbrock*, 240 F.3d at 1164.

With respect to his pain medication, D.L.P. directs the Court to the portion of his hearing testimony in which he stated that he does not like his "pain killers" because "it causes dizziness and drowsiness and sedation which keeps [him] from functioning as well." AR 264. Elsewhere in the hearing transcript, D.L.P. testified that the pain medicine Buprenorphine causes "real bad nausea, dizziness, and sedation" and "prevents [him] from being focused on anything," noting that he "sometimes catch[es] [him]self nodding off from the medication." AR 271-272. D.L.P. also points out that in a lumbar spine residual functional capacity questionnaire, D.L.P.'s medical source, Christopher Stewart, DNP, noted that Buprenorphine "can cause nausea, constipation." AR 1956. Two treatment notes from January 2020 and March 2020 document that D.L.P. reported to a physician that Buprenorphine made him feel nauseous and tired; he was advised to consult with his treating physician about adjusting the dosage. *See* AR 218, 223.

Although the ALJ did not explicitly reference the side effects of D.L.P.'s pain medication, he did give "greatest weight" to D.L.P.'s "subjective statements and [his] use of pain medications," and on that basis, assessed greater limitations (with respect to climbing ladders and scaffolds, kneeling, crouching and crawling) than those found by consultative examiner, Dr. Soheila Benrazavi, M.D. AR 28-29. The ALJ also addressed D.L.P.'s claimed limitations in his ability to concentrate, the more general complaint to which D.L.P. claims the side effects relate. As noted above, D.L.P. does not challenge the ALJ's evaluation of the evidence pertaining to his mental impairments, including the opinions of Drs. Rowan and Malone, or his conclusion that D.L.P. has only mild limitations in his ability to concentrate, persist or maintain pace and that do not cause more than minimal limitation in his ability to perform basic mental work activities. *See*

AR 23, 25; 20 C.F.R. § 416.920a(d)(1). Therefore, the Court concludes that D.L.P. has not demonstrated that the ALJ failed to consider the claimed side effects of his pain medication. *See Frampton v. Astrue*, 405 F. App'x 112 (9th Cir. 2010) (finding no error where the ALJ did not explicitly discuss claimant's side effects, but did discuss and reject the more general complaints to which the side effects relate); *Muhammed v. Apfel*, No. 98-02952 CRB, 1999 WL 260974, at *8-9 (N.D. Cal. Apr. 2, 1999) (concluding that the ALJ did not err in not specifically discussing claimant's side effect where he addressed claimant's general symptoms, including dizziness, and claimant did not claim that her side effects limited her residual capacity in a manner distinct from her symptoms).

## IV.  CONCLUSION

Based on the foregoing, D.L.P.'s motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: September 26, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

14